**KENTUCKY INSURANCE GUARANTY ASSOCIATION, Appellant,**

v.

**CONCO, INC. and Douglas Mercer, Appellees.**

**Douglas MERCER, Cross–Appellant,**

v.

**KENTUCKY INSURANCE GUARANTY ASSOCIATION, Cross–Appellee.**

Nos. 93–CA–162–MR, 93–CA–318–MR.

Court of Appeals of Kentucky.

May 6, 1994.

Discretionary Review Denied by Supreme Court Sept. 21, 1994.

Susan D. Phillips and William P. Swain, Boehl, Stopher & Graves, Louisville, for appellant/cross-appellee.

David B. Sandler, Westfall, Talbott & Woods, Louisville, for appellee Conco, Inc.

Fred E. Fischer, III and Joseph Michael Kelly, Louisville, for appellee/cross-appellant Mercer.

Before DYCHE, EMBERTON and SCHRODER, JJ.

DYCHE, Judge.

The Kentucky Insurance Guaranty Association ["KIGA"] appeals from a summary judgment and declaration of rights of the Jefferson Circuit Court holding it obligated to continue paying workers' compensation benefits to Douglas Mercer.

The facts of the case are not in dispute. Mercer sustained a work-related injury in October 1984 while in the employ of Conco, Inc. ["Conco"]. Conco was insured at that time by Ideal Mutual Insurance Company ["Ideal Mutual"] and pursuant to the terms of its insuring agreement, Ideal Mutual as-

sumed the defense of Conco with regard to a workers' compensation claim filed by Mercer seeking income benefits for his injury and for related medical expenses.

In February 1985 Ideal Mutual was adjudged to be insolvent. As a result, KIGA became liable for Ideal Mutual's obligations to its insureds, including Conco, pursuant to the Kentucky Insurance Guaranty Association Act, KRS 304.36–080. These obligations included Mercer's workers' compensation claim.

KIGA paid income and medical benefits resulting from Mercer's injury from 1985 until mid–1992. In January 1992 KIGA notified Conco that its liability on Mercer's claim was limited to $50,000.00, the statutory liability cap in effect when Ideal Mutual became insolvent in 1985. On June 4, 1992, Conco responded by filing a declaratory judgment action in the Jefferson Circuit Court against KIGA and Mercer asking the court to determine the respective responsibilities of Conco and KIGA for Mercer's current and future benefits and/or medical expenses.

Before the trial court, Conco contended that Mercer's entitlement exceeds the $50,-000.00 cap in effect at the time of Ideal Mutual's insolvency and that KIGA is responsible for paying these benefits and medical expenses by virtue of an amendment to the statute in 1990 which removed the statutory cap for workers' compensation claims. The Jefferson Circuit Court agreed, reasoning as follows:

> The issue is whether the subsequent amendments are to operate prospectively, limiting the KIGA's liability at $50,000, or retrospectively, leaving Mercer's workers' compensation claim excluded from the liability cap.
>
> The general rule is that statutes are to operate prospectively unless a contrary intent is expressed by the legislature. K.R.S. 446.080(3) states "No statute shall be construed to be retroactive unless expressly so declared."
>
> However, in *Peabody Coal Company v. Gossett,* Ky., 819 S.W.2d 33 (1991), the Kentucky Supreme Court held that if a statutory amendment was *remedial,* it does not come within the general rule

against the retrospective operation of statutes. The court adopted the following reasoning:

> A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or which creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. Therefore, despite the existence of some contrary authority, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes. In this connection it has been said that a remedial statute must be so construed as to make it effect the evident purpose for which it was enacted, so that if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied although the statute does not in terms so direct, unless to do so would impair some vested right or violate some constitutional guarantee. 73 Am.Jur.2d *Statutes* Section 354 (1974) (footnotes omitted).

[819 S.W.2d at 36.]

The amendments to K.R.S. 304.36–080(1) do not create or take away vested rights. Rather, the amendments['] exclusion of workers compensation claims simply expand an existing right of recovery by increasing the amount recoverable. Therefore, the 1990 amendment of K.R.S. 304.-36–080 excluding workers' compensation insurance policies, is a remedial statutory amendment.

This holding is consistent with K.R.S. 446.080(1) which states in relevant part "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature...." Further, this holding coincides with the express language of the Act that it "shall be liberally construed to effect the purpose under K.R.S. 304.36–020 which shall constitute an aid and guide [to] interpretation.["] K.R.S. 304.36–040[.]

The purpose of the Act is set forth in K.R.S. 304.36–020 and states in relevant part "to provide a mechanism for [the]

payment of covered claims under certain insurance policies to avoid [excessive] delay [in payment] and [to avoid] financial loss [to] claimants or policyholders because of the insolvency of [an] insurer.["] K.R.S. 304.36–020[.]

A contrary holding would shift the loss to Conco, an innocent purchaser of workers' compensation insurance, and insulate the KIGA, a state entity established solely to protect consumers against insolvent insurance companies. The amendment excluding workers' compensation was the General Assembly's attempt to avoid this unjust result.

Hence, with the trial court's ruling, KIGA was obligated to continue paying benefits and medical expenses resulting from Mercer's injury. This appeal followed.

■ Appellant first contends the nature and extent of KIGA's obligation to defend and pay a "covered claim"[1] is determined by the statutory concept in place at the time of the insolvency of the compensated carrier. Conco, on the other hand, argues the current statutory limit, which is now uncapped for workers' compensation claims, is applicable since Mercer continues to present unpaid medical bills related to his workers' compensation claim. Conco contends that when Mercer presents a new bill for payment, he in essence is presenting a new claim and that the statutory scheme in place at the time of each presentation governs. Both parties cite *Collins v. Cumberland Gap Provision Company*, Ky.App., 754 S.W.2d 864 (1988), in support of their positions. We note that *Collins* is a 1988 decision of this Court made prior to the 1990 amendment to KRS 304.36–080(1) and prior to the Kentucky Supreme Court's decision in *Peabody Coal Company v. Gossett, supra;* nevertheless, we will briefly address its impact on the case at hand although it is not dispositive of this appeal.

In *Collins,* the employee sustained a work-related injury in 1983. Ideal Mutual, his employer's insurer, was adjudged insolvent in 1985. Collins argued that KIGA's liability must be determined as of the date of his injury in 1983 when KIGA's liability for workers' compensation claims was uncapped.

KIGA maintained that its liability should be determined as of 1985, the date of Ideal Mutual's insolvency, when the statute capped liability on all claims at $50,000.00. This Court held:

Absent some clear showing of a legislative intent to the contrary, we believe the extent of the liability of the KIGA should be measured by the statutes in effect when it becomes liable to pay a covered claim.... The KIGA's liability to pay does not attach until an insurer is found to be insolvent by the appropriate court. In this case, that was in February 1985. At that time, the version of KRS 304.36–080 in effect did not exclude workers' compensation claims from the $50,000.00 limit to KIGA's obligation. Thus, we conclude that the KIGA's obligation to pay Mr. Collins is limited to $50,000.00.

754 S.W.2d at 866.

Based on the *Collins* decision alone, in the case at hand it is our opinion that KIGA's liability on Mercer's claim would be limited to $50,000.00 since it became liable to pay the claim at the time of the declaration of Ideal Mutual's insolvency in February 1985, the $50,000.00 cap being in effect on that date. We do not subscribe to Conco's theory that presentation of each new bill constitutes a new claim. Nevertheless, we must now review this case not only in light of *Collins* but an amended KRS 304.36–080(1) and the Kentucky Supreme Court's decision in *Peabody Coal Company v. Gossett, supra.* This brings us to the second issue raised by appellant and the grounds on which the case was decided by the trial court.

Appellant contends the 1990 amendment to KRS 304.36–080(1) lifting KIGA's cap in workers' compensation cases is not a remedial statutory amendment as held by the trial court. KIGA argues that the amendment does not affect the remedy, but rather the extent of recovery, and is therefore a substantive amendment to be applied prospectively. Conco and Mercer view the amendment as remedial, and further argue that *Peabody Coal* requires retroactive application of the 1990 amendment, resulting in

1. A "covered claim" is defined at KRS 304.36–050(3) as "an unpaid claim ... which arises out of and is within the coverage of an insurance policy ... issued by an insurer, if such insurer becomes an insolvent insurer after June 16, 1972...."

coverage of Mercer's continuing medical expenses.

In *Peabody Coal,* the Kentucky Supreme Court held that an amendment to a statute creating a new standard for reopening workers' compensation awards was to be applied retrospectively, and that the general rule against retrospective operation of statutes does not apply to amendments that are remedial. Here, the subject statute is remedial in nature since it "do[es] not create new or take away vested rights, but only operate[s] in furtherance of the remedy." *Peabody Coal,* 819 S.W.2d at 36, *citing* 73 Am.Jur.2d *Statutes* § 354 (1974). In short, it is apparent to this Court that the legislature, in amending the statute to remove the cap on KIGA's liability for workers' compensation claims, intended to enhance the protection of claimants such as Mr. Mercer and employers such as Conco.

Therefore, in light of *Peabody Coal* and the 1990 amendment to KRS 304.36–080(1), and finding ourselves in agreement with the arguments presented by appellees and the reasoning set forth by the trial court, we believe appellant is obligated to continue payment of workers' compensation benefits and/or medical expenses incurred by Mr. Mercer as a result of his injury and such are not subject to the $50,000.00 cap previously imposed.

■ On cross-appeal, Mr. Mercer contends the trial court erroneously dismissed his cross-claim against KIGA based upon violation of the Unfair Claims Settlement Practices Act, KRS 304.12–230. The immunity provisions of KRS 304.36–170 clearly bar such a claim by cross-appellant; we will not disturb the decision of the trial court merely because it was based upon potentially incorrect grounds. *See Richmond v. Louisville & Jefferson County Metropolitan Sewer District,* Ky.App., 572 S.W.2d 601 (1978).

The judgment of the Jefferson Circuit Court is affirmed.

All concur.